2. CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWERS—SECRETARY OF STATE—LICENSES—WHOLESALE GASOLINE DISTRIBUTORS.
   Statute prescribing that applicants for licenses as wholesale gasoline distributors must file bond in such amount as secretary of State shall fix between limits of $1,000 and $25,000 *held,* not a grant of legislative power to such officer (1 Comp. Laws 1929, § 3578, as amended by Act No. 166, Pub. Acts 1935).

3. STATUTES—CONSTRUCTION—OFFICERS.

If possible, the Supreme Court must so construe gasoline tax act as to render it valid, not invalid, to confer administrative, not legislative, powers on secretary of State charged with its administration and as vesting in him discretionary, not arbitrary power (1 Comp. Laws 1929, § 3576 *et seq.*).

4. SAME—CONSTRUCTION OF A PROVISO.

In considering proviso of a statute, which is incomplete standing alone, it must be construed with reference to the rest of the act.

5. SAME — CONSTRUCTION — GASOLINE TAX ACT — CONSTITUTIONAL LAW.

Proviso in gasoline tax act, requiring applicant for license as wholesale gasoline distributor to file bond in amount fixed by secretary of State between stated limits, which does not name obligee, set up its terms nor provide for approval, matters which are governed by other portions of same section, must be construed with remainder of act when validity is attacked because of alleged grant of legislative and arbitrary power to such official (1 Comp. Laws 1929, § 3578, as amended by Act No. 166, Pub. Acts 1935).

6. OFFICERS — CONSTITUTIONAL LAW — DISCRETION — GASOLINE TAX ACT—WHOLESALE DISTRIBUTOR'S BOND.

Gasoline tax act authorizing secretary of State to fix amount of bond required of wholesale gasoline distributor between limits of $1,000 and $25,000 *held,* to confer no legislative nor arbitrary power upon him but vests merely a discretion to be exercised within definite limits (1 Comp. Laws 1929, § 3578, as amended by Act No. 166, Pub. Acts 1935).

7. CONSTITUTIONAL LAW—DISCRIMINATORY LEGISLATION—PARTY NOT INJURED.

Requiring applicant for license as wholesale gasoline distributor to furnish surety company bond in amount fixed by secretary of State within stated limits is not an unreasonable requirement and as long as it has not shown itself to be a member of class alleged to have been discriminated against because of maximum amount set, it may not complain (U. S. Const., Am. 14).

8. PRINCIPAL AND SURETY—BONDS—LICENSES—WHOLESALE GASOLINE DISTRIBUTORS—STATUTES.

Since legislature may require surety company bonds where experience affords reasonable basis for doing so, especially as

incident to issuance of license for business legislature has power to license, such bond may be required of applicant for license as wholesale gasoline distributor in absence of any showing that compliance with such requirement was impossible or difficult or facts demonstrating provision that such bond be furnished rather than personal one or deposit of securities permitted was an arbitrary or capricious one (1 Comp. Laws 1929, § 3578, as amended by Act No. 166, Pub. Acts 1935).

9. Licenses — Wholesale Gasoline Distributors — Surety Company Bond.

Legislature *held*, to have power to require applicant for wholesale gasoline distributor's license to furnish surety company bond as a condition precedent to issuance of license (1 Comp. Laws 1929, § 3578, as amended by Act No. 166, Pub. Acts 1935).

10. Constitutional Law—Due Process—Licenses—Surety Company Bonds.

That some expense is incurred in connection with furnishing surety company bond by applicant for license as wholesale gasoline distributor *held*, not a deprivation of property without due process of law where cost of bond is not burdensome (U. S. Const., Am. 14; Mich. Const. 1908, art. 2, § 16; 1 Comp. Laws 1929, § 3578; as amended by Act No. 166, Pub. Acts 1935).

Petition for mandamus by the Argo Oil Corporation, a Michigan corporation, to compel Orville E. Atwood, Secretary of State, to issue wholesale gasoline distributor's license. Submitted December 19, 1935. (Calendar No. 38,764.) Writ denied December 31, 1935.

*J. M. Hatch & Son,* for plaintiff.

*David H. Crowley,* Attorney General, and *Edmund E. Shepherd,* Assistant Attorney General, for defendant.

Fead, J.   Act No. 150, § 2, Pub. Acts 1927 (1 Comp. Laws 1929, § 3577), imposes a tax of three cents per

gallon on gasoline used in motor vehicles on highways. While the tax is imposed upon the owners and drivers of vehicles, by whom it is ultimately paid, it is collected and paid to the State by wholesale distributors, who are required to have license, issued by the secretary of State, to engage in the business. On or before the 20th day of each month the distributor is required to make report to the secretary of State of all gasoline received by him during the preceding calendar month and to pay the tax thereon.

Plaintiff is a wholesale distributor. Its average monthly payments of tax for 1935 have been about $4,800. It has made application to the secretary of State for a license for 1936. The secretary of State refuses to issue the license until plaintiff files with him a bond, in the penal sum of $15,000, as fixed by the secretary of State, with corporate surety, in conformity with the statute as amended by Act No. 166, Pub. Acts 1935.

Plaintiff seeks writ of mandamus to compel the secretary of State to issue it a license for 1936 without bond, on the ground, among others, that the statute is invalid as vesting legislative and arbitrary power in the secretary of State to fix the amount of the bond.

The statute, after providing for sworn application by a distributor, requiring certain information and such other as the secretary of State may demand, provides:

"At the time of applying for such license every applicant shall pay to the secretary of State as an annual license fee the sum of five dollars, * * * and if the applicant cannot satisfy the secretary of State as to his financial responsibility he shall file with the

secretary of State a surety bond payable to the State of Michigan, upon which said applicant shall be the obligor, in a sum of not less than three thousand dollars nor more than twenty-five thousand dollars, conditioned that the applicant shall comply with the laws pertaining to wholesale distributors of gasoline and will promptly file true reports and pay the taxes and penalties provided for or required by this act, which bond shall be approved as to amount and sureties by the secretary of State, Provided, That every applicant for a license for the calendar year nineteen hundred thirty-six and thereafter, shall file a corporate surety bond with the secretary of State in such amount as shall be fixed by him except that the amount shall never be less than one thousand dollars nor more than twenty-five thousand dollars.'' (1 Comp. Laws 1929, § 3578, as last amended by Act No. 166, Pub. Acts 1935.)

The proviso was added by Act No. 166, Pub. Acts 1935; the remainder of the section quoted was a reenactment of part of Act No. 192, Pub. Acts 1931.

Taking into account the fact that one and two-thirds months' taxes accumulate before the distributor is required to report and pay the preceding month's tax, the fluctuations of business, and delays in report and payment which sometimes occur, the secretary of State has adopted a uniform rule fixing the penal sums of the bonds at three times the average monthly tax for prompt payers of it and four times for those who have not been prompt in payment, the latter evidently suggested by Act No. 192, § 6, Pub. Acts 1931. Plaintiff does not claim the secretary of State has acted arbitrarily in its case nor does it challenge the fairness of the rule adopted except as it, or any other rule, necessarily would be discriminatory against the small distributors and in favor of the larger distributors because the statute

provides a maximum of penal sum to be required. The attack is upon the statute itself, not upon the discretion exercised by the secretary of State thereunder if the law be valid.

It is too well settled to need the citation of supporting authorities that the legislature, within limits defined in the law, may confer authority on an administrative officer or board to make rules as to details, to find facts, and to exercise some discretion, in the administration of a statute. The difficulty is in determining whether the limits are sufficiently defined to avoid delegation of legislative powers. Exhaustive annotations of the general subject will be found in 12 A. L. R. 1435; 54 A. L. R. 1104; 92 A. L. R. 400.

Confined to the matter of the power to fix the amount of bonds, the following cases are illustrative of the difficulty. In *People, ex rel. Moore,* v. *J. D. Beekman & Co.,* 347 Ill. 92 (179 N. E. 435), it was held that where the statute set up three factors for the secretary of State to consider in setting the amount of the bond, (1) the method of transacting business, (2) financial standing of the applicant, and (3) his experience, ability and general reputation, the standard was not sufficiently definite and it permitted arbitrary discrimination between worthy applicants because of their financial standing. On the other hand, in *Sheppard* v. *Owl Refining Co.* (Tex. Civ. App.), 68 S. W. (2d) 1101, it was held that the statute set up a sufficient standard to authorize an officer to fix the penal sum, in providing for "a good and sufficient" distributor's bond of $1,000 to $25,000; and in *Gross* v. *Commonwealth,* 256 Ky. 19 (75 S. W. [2d] 558), a statute was sustained which provided for a bond from the operator of a taxi—*"in such penal sums or maximum amounts*

*as said commission may deem necessary* for the reasonable protection of the patrons of the operator of the motor vehicle for hire and of the public in the collection of damages for which the operator may be liable by reason of the operation of any motor vehicle for hire.''

It is not necessary to discuss or distinguish these or other cases because the statute at bar sets up a standard of purpose, policy and power so definite that the acts of the officer may be tested and tried thereby according to the ordinary processes of judicial inquiry. In such case there is no grant of legislative power.

If it be possible, we must construe the statute to render it valid, not invalid, to confer administrative, not legislative, power on the secretary of State, and as vesting in him discretionary, not arbitrary, authority. Also, we must read the statute as a whole, not isolate the proviso and construe it without reference to the rest of the act. The proviso is incomplete. It does not name the obligee of the bond, set up its terms, nor provide for its approval. These matters are governed by the reenacted portion of the section because the proviso makes no change in it as to them.

So reading the act, we find it plainly discloses the purpose of the bond and expressly provides its conditions. Thereby, it establishes a definite objective for the secretary of State in setting the penal sum of the bond in an individual case, necessarily provides the limits of his discretion and affords a fixed standard by which his acts may be judicially tried. It is clear that he may set such amount only as is reasonably adapted to work the purpose and effectuate the conditions of the bond, to secure obedience to the act and payment of the tax.

The statute confers no legislative or arbitrary power on the secretary of State but vests in him merely a discretion to be exercised within definite legal limits and is not invalid.

Plaintiff further contends that the law necessarily discriminates against the small distributor by establishing a maximum bond, above which the larger distributor would not give security to the State. Plaintiff is not required to do an unreasonable thing and is not in position to complain of the alleged discrimination because it has not sustained injury by the provision for maximum bond, and none is threatened which can affect it. *Pauley* v. *State of California* (C. C. A.), 75 Fed. (2d) 120; *Monamotor Oil Co.* v. *Johnson,* 292 U. S. 86 (54 Sup. Ct. 575).

Plaintiff also complains that the law is unreasonable and invalid in requiring a surety company bond instead of permitting personal bonds or the deposit of securities.

Provisions requiring surety bonds have been held invalid in *State of Ohio, ex rel. McKell,* v. *Robins,* 71 Ohio St. 273 (73 N. E. 470, 69 L. R. A. 427, 2 Ann. Cas. 485); *State, ex rel. Barr,* v. *Deckebach,* 105 Ohio St. 643 (138 N. E. 926); and *Jitney Bus Association of Wilkes-Barre* v. *Wilkes-Barre,* 256 Pa. 462 (100 Atl. 954), as discriminatory and unreasonable, particularly when it is difficult to obtain such bond, and for other reasons; they have been held valid in *Re Paul Cardinal,* 170 Cal. 519 (150 Pac. 348, L. R. A. 1915 F, 850), and *Ferguson-Hendrix Co.* v. *Fidelity & Deposit Co.,* 79 Wash. 528 (140 Pac. 700), in the latter of which the court made the pertinent remark:

"It would seem that the power to exact the security includes the right to determine the character and sufficiency of the security; that the greater power includes the lesser power."

The imperfections in personal bonds and deposit of securities indicated by experience afford a reasonable basis for the legislature to require surety bonds, at least in some instances. No showing of impossibility or difficulty in procuring them nor other facts demonstrate that the action of the legislature was arbitrary and capricious. While the power of the legislature to require such bonds may be discriminatory and violate constitutional limitations in some relationships or under some circumstances, the requirement is not *ipso facto* an unreasonable condition of a license for a business which the legislature has the power to license and in the absence of injury therefrom plaintiff cannot complain of it.

Confined to the particular case before us, we think the better reasoning sustains the power of the legislature in this respect.

Plaintiff further attacks the provision for surety bonds, because they cost money to buy, as depriving it of property without due process of law. This contention is answered by *Pierce Oil Corp.* v. *Hopkins,* 264 U. S. 137 (44 Sup. Ct. 251), which held that the fact that there is an incidental expense in connection with the collection and payment of a tax by a licensed dealer does not make the statute offend the due process clause.* If the cost of the bond were burdensome, a different question would arise.

Writ denied, but without costs.

POTTER, C. J., and TOY, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.

---

* U. S. Const., Am. 14; Mich. Const. 1908, art. 2, § 16.—REPORTER.